UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| WILLIAM MOORE-BEY, | ) | |
|---|---|---|
| Petitioner | ) | |
| v. | ) | CAUSE NO. 3:08-CV-089 RM |
| SUPERINTENDENT, MIAMI CORRECTIONAL FACILITY, | ) | |
| Respondent | ) | |

OPINION AND ORDER

Petitioner William Moore-Bey, a prisoner confined at the Miami Correctional Facility ("MCF"), submitted a petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 dealing with loss of earned credit time in a disciplinary hearing. On November 10, 2007, Correctional Officer R. Fisher found a $100 bill in Mr. Moore-Bey's property box during a shakedown and wrote a conduct report against him for unauthorized possession of money or currency. On November 19, 2007, a disciplinary hearing board found Mr. Moore-Bey guilty, gave him a written reprimand, and imposed a loss of 60 days of earned credit time. Mr. Moore-Bey appealed unsuccessfully to the facility superintendent and the final reviewing authority.

When prisoners lose good time credits at prison disciplinary hearings, the Fourteenth Amendment's Due Process Clause guarantees them certain procedural protections, including (1) advance written notice of the charges; (2) an opportunity to be heard before an impartial decision maker; (3) opportunity to call witnesses and present

documentary evidence in defense when consistent with institutional safety and correctional goals; and (4) a written statement by the fact finder of evidence relied on and the reasons for the disciplinary action, Wolff v. McDonnell, 418 U.S. 539 (1974), and "some evidence" to support the decision of the prison disciplinary board." Superintendent, Mass. Correctional Institution v. Hill, 472 U.S. 445, 455 (1985).

In ground one of his petition, Mr. Moore-Bey asserts that the "screening officer failed to assign the proper case number to the case he was charged and tried for depriving him of those rights enumerated on state form 39585." (Petition at p. 3). He also states that the screening officer did not mark on the form that he read the rights listed on the screening report to Mr. Moore-Bey.

Section 2254(a) provides that federal courts "shall entertain an application for writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Relief in this action is only available from violation of the federal Constitution or laws. Estelle v. McGuire, 502 U.S. 62 (1991). State law questions don't state a claim for habeas relief, Kraushaar v. Flanigan, 45 F.3d. 1040 (7th Cir. 1995); Hester v. McBride, 966 F.Supp. 765 (N.D.Ind. 1997), and violations of disciplinary policies, such as those alleged by this petitioner, do not state a claim for federal habeas relief. *Id.* at 774-775.

The respondent argues that the screening officer initialled the portion of the screening report certifying that he read Mr. Moore-Bey his rights, and points to the copy of the screening report in the administrative record to substantiate this point. (Docket #11-

2

3, Exhibit B). But even if the petitioner were correct, and the screening officer didn't read Mr. Moore-Bey the list of rights established by Indiana Department of Correction policy, it wouldn't entitle him to relief. That the screening officer may have made a clerical mistake on the screening form, or didn't follow IDOC policy, states no claim upon which relief can be granted. Wolff v. McDonnell doesn't require the screening officer to read an accused inmate his rights, and the circumstances in this case didn't deny Mr. Moore-Bey any of the rights enumerated in Wolff v. McDonnell.

Wolff requires that prisoners receive advance written notice of the charges against them so they can formulate a defense. The parties' submissions establish that the conduct report provided Mr. Moore-Bey with sufficient notice of the charges against him to formulate a defense. Moreover, the statement of rights the screening officer was apparently supposed to read to Mr. Moore-Bey is printed on the screening report. The screening officer gave Mr. Moore-Bey a copy of the screening report, so Mr. Moore-Bey could have read this list of rights himself.

In ground three of his petition, Mr. Moore-Bey asserts that the Board denied him due process when it "refused to call [as] witness[es] Officer Bork and Inmate Gordon and make inquiry into the statement made by Inmate Steele." (Petition at p. 5). He also asserts that the Board didn't consider Mr. Steele's statement that he had placed the money in Mr. Moore-Bey's property box. In ground five, Mr. Moore-Bey asserts that the Board violated his due process rights when it denied his requests for a polygraph test, finger print test and a copy of his visiting list.

3

Mr. Steele wrote a witness statement claiming ownership of the $100 and taking responsibility for putting it in Mr. Moore-Bey's property box. Mr. Steele's witness statement was submitted to the Board and is part of the administrative record, (docket #11-8, Exhibit G), and the Board Chairman signed and dated Mr. Steele's witness statement form. Accordingly, Mr. Steele's statement was before the disciplinary board and considered as evidence. That the Board didn't accept Mr. Steele's statement as true doesn't mean that it didn't consider the statement.

Mr. Moore-Bey states in his traverse that:

> during the course of the hearing the petitioner was informed by the chairman of [the] board that inmate Gordon had submitted a statement on his behalf from inmate Steele alleging that he had placed the money in petitioner's property without his knowledge. This statement was given to Officer Burk who in turn gave it to the cell house clerk to be submitted to the Board."

(Docket #16 at p. 24). Mr. Moore-Bey argues that the Board violated his due process rights by denying his request to call Mr. Gordon and Officer Burk to testify.

Wolff provides that a prisoner facing the loss of earned credit time has the right to present exculpatory evidence. But a prisoner's due process right to call exculpatory witnesses at prison disciplinary hearings is not unlimited. Prisoners don't have the right to confront or cross-examine their accusers, Wolff v. McDonnell, 418 U.S. at 567, and witnesses may be limited consistent with institutional safety and correctional goals. Superintendent v. Hill, 472 U.S. at 454. Prison disciplinary boards also may decline to hear witnesses whose testimony would be irrelevant or repetitive. Pannell v. McBride, 306 F.3d 499, 503 (7th Cir. 2002).

4

The exculpatory evidence here was Mr. Steele's statement, which the Board accepted and considered. Testimony from Mr. Gordon and Officer Burk would not have been exculpatory because they had no personal knowledge of the incident and their testimony wouldn't have suggested Mr. Moore-Bey's innocence. All these witnesses could have testified to was how Mr. Steele's statement came to be written and passed on to the Board. Had their testimony been necessary to establish a chain of custody for Mr. Steele's statement, Mr. Gordon and Officer Burk's testimony would have been essential. But the Board simply accepted Mr. Steele's statement into evidence, eliminating any need to call these witnesses.

Mr. Moore-Bey asserts that he requested "to be provided with a polygraph test, finger print test and a copy of his visiting list." (Petition at p. 10). The Board rejected these requests on the record, stating that polygraphs and fingerprint tests were not available at the MCF and the visitor's list was irrelevant. (Docket #11-11, Exhibit J).

Where physical evidence, such as a videotape, already exists, a prisoner may ask a disciplinary board to review it. Piggie v. Cotton, 344 F.3d 674 (7th Cir.2003). But Wolff v. McDonnell doesn't require prison officials to conduct polygraph or other tests at an inmate's request, particularly where the facility doesn't have the capacity to conduct such tests.

Mr. Moore-Bey argues that his visitors' list "would have shown that he had not received a visit in over two (2) years and therefore could not have received the $100 dollar bill via visitation." (Petition at p. 10). But Mr. Moore-Bey was not charged with trafficking

5

by receiving money during visitation. He was charged with possession of money. If visitation were the only way money could enter the facility, then Mr. Moore-Bey's visitor list would have been relevant. But since he could have obtained the money through the mail or directly from another inmate, his visitors' list was irrelevant to the charge against him.

In ground two of his petition, Mr. Moore-Bey says he was denied due process "when the minimum requirements are not met in the DHB finding with the burden of 'some evidence' in the presence of contradicting evidence." (Petition at p. 4). Mr. Moore-Bey states that Mr. Steele's statement "admitted that he placed the $100.00 bill in Moore-Bey's box. Inmate Gordon presented that statement to the DHB. That statement supported Moore-Bey's claim of innocence." (Petition at p. 4).

The amount of evidence needed to support a finding of guilt in prison disciplinary hearings is modest; there need only be "some evidence" to support the decision of the prison disciplinary board." Superintendent, Mass. Correctional Institution v. Hill, 472 U.S. at 455. The "some evidence" standard "does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board." *Id*. at 457. A reviewing court must uphold a finding of guilt if "there is any evidence in the record that could support the conclusion reached" by the board. *Id*. at 457.

In this case, the conduct report states that during a shakedown of Mr. Moore-Bey's cell, officers discovered a $100 bill hidden in a rubber glove in his property box. That officers found the money in Mr. Moore-Bey's property box constitutes some evidence that

it belonged to him, and constitutes sufficient evidence to support a finding of guilt on the charge of unauthorized possession of money. Hamilton v. O'Leary, 976 F.2d 341 (7th Cir. 1992). That there was conflicting evidence didn't require the Board to find Mr. Moore-Bey not guilty. The Board chose not to credit Mr. Steele's statement that he hid the money in Mr. Moore-Bey's box without Mr. Moore-Bey's knowledge, and this court doesn't have the authority to re-weigh the evidence.

In Ground four of his complaint, Mr. Moore-Bey asserts that the Board violated his due process rights by assigning him a lay advocate even though he had not requested one. The respondent argues that Mr. Moore-Bey is precluded from presenting this claim in his habeas petition because he didn't present it in his administrative appeal.

Before a habeas petitioner may present his claims to this court 28 U.S.C. § 2254(b)(1)(A) requires that he must have exhausted his state remedies as to those claims. Section 2254(b)(1)(A) provides that an application for a writ of habeas corpus by a state prisoner shall not be granted unless "the applicant has exhausted the remedies available in the courts of the State." The principles of exhaustion of available state remedies and procedural default apply to prison disciplinary hearings. Markham v. Clark, 978 F.2d 993 (7th Cir. 1992). Failure to raise the issue on appeal to the final reviewing authority is a waiver of the claim. Eads v. Hanks, 280 F.3d 728, 729 (7th Cir. 2002).

The administrative record establishes that Mr. Moore-Bey didn't present his lay advocate claim in his appeal to the Superintendent and the final reviewing authority. (Docket #E11-12 and #11-13, Exhibits K and L). Mr. Moore-Bay tried to file a second appeal

7

raising this claim, but prison officials rejected that request. (Docket #11-17, Exhibit P). When a state tribunal relies on waiver and procedural default rather than reviewing a claim on the merits, federal courts won't review those claims on the merits in a habeas proceeding. Accordingly, Mr. Moore-Bey hasn't exhausted his state remedies on this claim.

For the foregoing reasons, the court DENIES this petition.

SO ORDERED.

DATED: January  16 , 2009

                                       /s/ Robert L. Miller, Jr.
                                       Chief Judge
                                       United States District Court